**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS HARDIE,**

                     **Plaintiff,**

       **v.**

**CITY OF ALBANY et al.,**

                  **Defendants.**
_____

**1:18-CV-470
(GLS/CFH)**

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Thomas Hardie
Pro Se
Woodbourne Correctional Facility
99 Prison Road
PO Box 1000
Woodbourne, NY 12788

**FOR THE DEFENDANTS:**
The Rehfuss Law Firm, P.C.      STEPHEN J. REHFUSS, ESQ.
40 British American Blvd.
Latham, NY 12110

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff _pro se_ Thomas Hardie brings claims under 42 U.S.C. § 1983

against defendants the City of Albany and City of Albany Police Officers

Jarrod Jourdin, Raven Dixon, and John Buhner.  (2d Am. Compl., Dkt. No. 17.)  Pending before the court are (1) Hardie's motion to strike, (Dkt. No. 29), (2) defendants' cross-motion to dismiss, (Dkt. No. 34), (3) Hardie's motion for sanctions, (Dkt. No. 48), (4) Hardie's motion for partial summary judgment, (Dkt. No. 50), and (5) Hardie's request for a stay, (Dkt. No. 56). For the reasons stated below, defendants' cross-motion to dismiss is granted in part and denied in part, and all other motions are denied.

## II. Background

### A. Facts[1]

Hardie generally alleges that three City of Albany Police Officers (defendants officers Jourdin, Dixon, and Buhner) used excessive force on him during the course of an arrest, and that those same officers repeatedly denied Hardie's request for medical care.  (*See generally* 2d Am. Compl, Dkt. No. 17.)

On the evening of April 28, 2017, Hardie was approached by defendant police officers near his home in Albany, New York who, according to Hardie, "forcefully push[ed]" him, "pull[ed]" him, "physically

_____

[1] The facts are drawn from Hardie's second amended complaint, (Dkt. No. 17), and presented in the light most favorable to him.  Citations to this pleading and all other filings are to the CM/ECF-generated page numbers.

assault[ed]" him, and "knock[ed] [him] to the ground." (*Id.* at 14.) And while defendant police officers were handcuffing Hardie, officer Jourdin "stepped" and "stomped" on his right hand with "hard bottom footwear," which caused Hardie to suffer an injury to the fourth digit finger of his right hand. (*Id.*) Officer Dixon then transported Hardie to the police station, during which Hardie had a "noticeable bleeding right hand" and during which Hardie informed officer Dixon that he was in pain. (*Id.* at 15.)

Upon arriving at the station, Hardie made a request for medical attention and showed officer Dixon his injury. (*Id.* at 16.) Officer Dixon did not comply with Hardie's request, and instead attempted to "interrogate" him. (*Id.*) Shortly thereafter, officer Jourdin arrived at the Albany Police Station and—with notice of Hardie's injury—aggravated the injury further with an "agonizing twist" and by "tightly applying handcuffs." (*Id.*) Officer Jourdin also "grabbed the center chain of the handcuff" and "yanked, pulled and raised [Hardie's] cuffed hands above [his back]," while he "pushed and shoved [Hardie] into a jail holding cell," which aggravated the injury even further. (*Id.* at 18.) Hardie stayed in that holding cell for approximately six and a half hours without being provided medical attention. (*Id.*)

Hardie was eventually transported to the Albany County Correctional Facility, where a correction officer documented an injury to Hardie's right hand and sent him to the facility's medical staff. (*Id.* at 19.) The medical staff cleaned Hardie's injured hand and wrapped it in gauze. (*Id.*) Approximately one week later, Hardie reported back to the facility's medical staff, where a doctor informed him that he had fractured the fourth digit finger on his right hand. (*Id.* at 20.) This injury was later confirmed by an orthopedic surgeon. (*Id.*) Hardie was in a cast for nearly two months as a result of his injury. (*Id.* at 20-21.)

Hardie seeks compensatory and punitive damages from each individual defendant in his or her individual capacity, but seeks no damages against the City of Albany. (*Id.* at 22-23.)

## B. Procedural History[2]

Hardie filed his initial complaint on April 16, 2018. (Compl., Dkt. No. 1.) The court later adopted Magistrate Judge Christian F. Hummel's

---

[2] As a pro se litigant, the court must read Hardie's pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).

Report-Recommendation and Order and—to the extent Hardie alleged

them—dismissed with prejudice any claims against defendant police

officers in their official capacities, and dismissed without prejudice claims

for false arrest and false imprisonment.  (Dkt. Nos. 12, 16.)  At the time,

Hardie's remaining claims were: (1) claims against individual officers in

their individual capacities, (2) a *Monell* claim against the City of Albany, (3)

a Fourteenth Amendment deliberate indifference claim against the

individual officers,[3] and (4) a Fourth Amendment excessive force claim

against the individual officers.  (Dkt. No. 16.)  Hardie subsequently filed the

operative complaint, (2d Am. Compl.), which further amended his amended

complaint, (Am. Compl., Dkt. No. 10).

Defendants asserted thirty-three affirmative defenses in their answer,

(Dkt. No. 28), four of which served as the subject of Hardie's motion to

strike, (Dkt. No. 29).  In response to Hardie's, motion to strike, defendants

---

[3] Notably, the court erred in its September 7, 2018 order, (Dkt. No. 16), adopting Magistrate Judge Hummel's Report-Recommendation and Order, (Dkt. No. 12), by stating that "a Fourteenth Amendment deliberate indifference claim against the individual officers" remains in this case, (Dkt. No. 16 at 3).  Hardie did not bring a claim of deliberate indifference to medical care against officer Buhner in his complaint, amended complaint, or second amended complaint.  (Compl. at 5; Am. Compl. at 5, Dkt. No. 10; 2d Am. Compl. at 11.)  Hardie also specifies in his motion for partial summary judgment as to his claim of deliberate indifference to medical care, (Dkt. No. 50), that he is seeking summary judgment against only officers Jourdin and Dixon, (*id.* at 2).  Thus, there is no claim for deliberate indifference against officer Buhner.

filed a cross-motion to dismiss, (Dkt. No. 34), and moved to dismiss (1) Hardie's *Monell* claims against the City of Albany, (2) any request for punitive damages against the City of Albany, and (3) any claims alleged against the individual defendants sued in their official capacities, (Dkt. No. 34, Attach. 2 at 3.)  Defendants included certain police reports as an exhibit to their cross-motion to dismiss.  (Dkt. No. 34, Attach. 1).

On June 10, 2019, Hardie notified the court that he intended to move for sanctions against officers Jourdin and Dixon, and their counsel, Stephen Rehfuss.  (Dkt. No. 47 at 1-2.)  Hardie then moved, on August 15, 2019, for sanctions to be imposed pursuant to Federal Rule of Civil Procedure 11 against those parties, alleging that the police reports included in defendants' cross-motion to dismiss constituted "manufactured" and "falsifi[ed]" evidence.  (Dkt. No. 48 at 2-3.)  Hardie also requested entry of summary judgment in this same motion.  (*See id.* at 9.)

Shortly thereafter, Hardie filed a separate motion for partial summary judgment as to his claim against officers Jourdin and Dixon for deliberate indifference to medical care.  (Dkt. No. 50.)  In Hardie's reply in support of his motion for partial summary judgment, he—in the event of an unfavorable decision by the court—requests a stay so that he can conduct

discovery, and amend his complaint again to include new claims and new defendants.  (Dkt. No. 56 at 9-10.)

### III.  Standards of Review

### A.  Motion to Strike

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion."  *Jennison v. Hartford Life & Acc. Ins. Co.*, No. 3:10-CV-164, 2011 WL 3352449, at *2 (N.D.N.Y. Aug. 3, 2011) (citations omitted).  And "[m]otions to strike affirmative defenses are generally disfavored."  *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014) (citation omitted).

Indeed, "[t]he standard to prevail on a motion to strike an affirmative defense is demanding."  *Cent. N.Y. Laborers' Health v. JWJ Indus., Inc.*, No. 5:12-CV-1319, 2015 WL 12564221, at *14 (N.D.N.Y. Mar. 5, 2015) (citation omitted).  "[T]o prevail on a motion to strike: (1) there may be no question of fact which might allow the defense to succeed; (2) there may be no substantial question of law, a resolution of which could allow the defense to succeed; and (3) the moving party must show that it is

7

prejudiced by the inclusion of the defense." *Id.* (quoting *Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 418 (S.D.N.Y. 2013)).

**B.**    **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a full discussion of the governing standard for Rule 12(b)(6), the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

**C.**    **Motion for Sanctions**

A court has authority to sanction a party under Rule 11(c) if it determines that the party has made false, misleading, improper, or frivolous representations to the court in violation of Rule 11(b). *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008). However, "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). "Further, the motion must first be served upon the offending party, who is then given 21 days to remedy the sanctionable conduct before the motion may be made to the court." *Finnan v. Ryan*, No. 8:08-CV-259, 2008 WL 4891162, at *7 (N.D.N.Y. Nov.

7, 2008).  Compliance with these procedural prerequisites is mandatory.
*See Williamson*, 542 F.3d at 51-52; *Hadges v. Yonkers Racing Corp.*, 48
F.3d 1320, 1328-29 (2d Cir. 1995).  Additionally, "even when a district court
finds a violation of Rule 11, the decision whether to impose a sanction . . .
is committed to the district court's discretion."  *Ipcon Collections LLC v.
Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (internal quotation
marks, citation, and alterations omitted).

**D.**    **Motion for Partial Summary Judgment**

The standard of review pursuant to Rule 56 of the Federal Rules of
Civil Procedure is well established and will not be repeated here.  For a full
discussion of the standard, the court refers the parties to its decision in
*Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom.*
*Wagner v. Sprague*, 489 Fed. App'x 500 (2d Cir. 2012).

## IV.  Discussion

**A.**    **Hardie's Motion to Strike**

Defendants included thirty-three affirmative defenses in their answer.
(Dkt. No. 28 at 1-5.)  Hardie moves to strike the four affirmative defenses,
which pertain to (1) the applicable statute of limitations, (2) personal
jurisdiction, (3) the applicable provisions of the General Municipal Law, and

9

(4) Hardie's membership in a protected group. (Dkt. No. 29 at 2-3.) Hardie argues that these affirmative defenses should be stricken from the answer because (1) the statute of limitations has not run since he filed his complaint within one year of the alleged constitutional violation, (2) the court has personal jurisdiction, (3) the General Municipal Law does not apply because he did not bring a state law claim against defendants, and (4) he is a member of a protected group as a citizen of the United States. (*Id.*)

Hardie appears to have a fundamental misapprehension of the legal significance of the answer and the affirmative defenses cited therein. Hardie does not argue that there may be no question of fact or law "which might allow the defense[s] to succeed," nor does he argue that he is "prejudiced by the inclusion of the defense[s]." *See JWJ Indus.*, 2015 WL 12564221 at *14. Instead, Hardie effectively asks for judgment as a matter of law as to the four identified affirmative defenses. (Dkt. No. 29 at 2-3.) But the affirmative defenses in defendants' answer are not necessarily viable defenses, and do not hold any legal weight unless and until motions are filed on those issues. In fact, "a defendant must only 'affirmatively state' an affirmative defense pursuant to Rule 8(c) and need not meet the

[Supreme Court's] plausibility standard." *Sibley v. Choice Hotels Intern., Inc.*, 304 F.R.D. 125, 133 (E.D.N.Y. 2015). While Hardie's substantive arguments appear to have some merit, the viability of defendants' affirmative defenses can be addressed at a later time. *See id.* ("A motion to strike is generally determinable only after discovery and a hearing on the merits." (internal quotation marks and citations omitted)). Thus, at this stage, the court declines to exercise its discretion to strike affirmative defenses from defendants' answer. Accordingly, Hardie's motion to strike, (Dkt. No. 29), is denied.

## B. Defendants' Cross-Motion to Dismiss[4]

Defendants' moved to dismiss Hardie's (1) *Monell* claim against the City of Albany for failure to train its employees, (2) request for punitive damages against the City of Albany—to the extent he makes one, and (3) claims against officers Jourdin, Dixon, and Buhner in their official capacities—to the extent Hardie makes such claims. (Dkt. No. 34,

---

[4] Defendants submitted an exhibit to their cross-motion to dismiss that includes various reports created by the Albany Police Department regarding Hardie's arrest. (Dkt. No. 34, Attach. 1.) Pursuant to Federal Rule of Civil Procedure 12(d), neither these submissions nor any other facts put forth by defendants were considered for purposes of ruling on the cross-motion to dismiss. *See* Fed. R. Civ. P. 12(d); *Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005) (explaining that in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor" (citation omitted)).

Attach. 3 at 4-6.)

First, Defendants' argue that Hardie's *Monell* claim against the City of Albany must be dismissed because he "has failed to set forth any factual allegations to support a plausible 1983 failure to train cause of action against the City of Albany," because he alleges "one isolated incident of misconduct . . . rather than a pattern or widespread practice," and "fails to allege that the misconduct was undertaken and/or known and ratified by a policymaking municipal employee." (Dkt. No. 34, Attach. 3 at 5 (citing *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)).)

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish a municipal policy or custom, a plaintiff may allege, among other things, "a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x  26 (2d Cir. 2007) (citation omitted).

To show that a municipality, through its failure to train or supervise employees, has violated § 1983, three requirements must be met. *See Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). First, the municipality's policy maker must know "'to a moral certainty' that [his or] her employees will confront a given situation.'" *Id.* at 297 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Second, either the situation must present the employee with the sort of difficult decision that training or supervision would ameliorate or there is "a history of employees mishandling the situation." *Id.* Finally, it must be shown that the "wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298 (citation omitted). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Indeed, "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Id.* (citations omitted).

Evidence of an unconstitutional action by a police officer will not, on its own, be enough to prove that the training program the officer received

was inadequate, let alone prove that any inadequacy was a result of a city's deliberate indifference. *See Carnegie v. Miller*, 811 F. Supp. 907, 911 (S.D.N.Y. 1993). "Deliberate indifference means that the city made a 'deliberate choice' not to train its employees from among various alternatives." *Pawlicki v. City of Ithaca*, 1996 WL 705785, at *2 (N.D.N.Y. Dec. 5, 1996) (citing *Harris*, 489 U.S. at 389). "Such deliberate indifference may be inferred from a failure to supervise: from proof of repeated complaints of constitutional violations that 'are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents.'" *Velasquez v. City of New York*, 960 F. Supp. 776, 783 (S.D.N.Y. 1997) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). However, "liability will not attach unless the training inadequacy is closely related to the ultimate injury." *Pawlicki*, 1996 WL 705785, at *2 (citation omitted).

Here, Hardie supports his claim of municipal liability against the City of Albany for failure to train or supervise its employees primarily with legal conclusions. (2d Am. Compl. at 21-22.) Indeed, Hardie's complaint alleges just one, isolated incident of misconduct. (*See generally* 2d Am. Compl.) Further, he did not substantively respond to defendants' argument

in their cross-motion, (Dkt. No. 34), that Hardie has failed to allege a failure to train cause of action.  (*See generally* Dkt. No. 45.)  But even though Hardie's complaint is lacking in factual allegations to support this claim, the Second Circuit instructs the district courts to read a *pro se* plaintiff's complaint liberally, *see Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011), and it would be very difficult for Hardie as a *pro se* inmate to gather the necessary facts to support his claim at this early stage in the litigation—before discovery has even begun.  Defendants' motion to dismiss as it pertains to Hardie's *Monell* claim is therefore denied. Defendants may renew their arguments following discovery.

Second, Defendants' argue that "[i]t is well established that punitive damages are not available against a government entity."  (Dkt. No. 34, Attach. 3 at 6 (citing, among other things*, New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006)).) Hardie's complaint does not seek punitive damages against the City of Albany.  In fact, the complaint makes clear that Hardie is not seeking ***any*** monetary damages against the City of Albany.  (2d Am. Compl. at 22.) Moreover, Hardie confirmed that he is not seeking punitive damages against it in his response to defendants' cross-motion to dismiss.  (Dkt. No.

45 at 3 ("A claim made by me for punitive damages against the City of Albany does not exist.").)  Defendants' motion to dismiss as it pertains to Hardie's request for punitive damages against the City of Albany—to the extent his complaint can be read as making such a request—is therefore granted.

Finally, Defendants' argue that "[i]t is well established that, 'claims against individual defendants in their official capacities are really claims against the municipality and, thus, are redundant when[, as is the case here,] the municipality is also named as a defendant.'"  (Dkt. No. 34, Attach. 3 at 6 (quoting *Zachary v. Clinton County*, 2003 WL 24197685, at *2 (N.D.N.Y. Jan. 10, 2003)).)  On September 7, 2018, all claims against officers Jourdin, Dixon, and Buhner in their official capacities were dismissed with prejudice.  (Dkt. No. 16 at 2-3.)  Although the term "official capacity" appears in Hardie's second amended complaint, he also includes the words "in their individual capacity" at the end of the causes of action against these defendants.  (2d Am. Compl. at 9-11.)  In any event, Hardie confirmed in his response to defendants' cross-motion to dismiss that his complaint should not be read to include any claims against the individual defendants in their official capacities.  (Dkt. No. 45 at 3 ("A claim made by

me to sue the . . . defendant police officers in their official capacit[ies] does not exist in my complaint.").)  Defendants' motion to dismiss as it pertains to Hardie's claims against officers Jourdin, Dixon, and Buhner in their official capacities—to the extent his complaint can be read as bringing such claims—is granted.

## C.    **Hardie's Motion for Sanctions**

Hardie moves for sanctions against officers Jourdin and Dixon, as well as their counsel, Stephen Rehfuss.  (Dkt. No. 48.)  Hardie alleges that the Albany Police Department's "Admissions Screening Sheet" prepared for Hardie's arrest was falsified and contained forgery and other inaccuracies.  (*Id.* at 3-7, 10-11.)  Hardie also challenges Rehfuss' affidavit, which was filed in support of defendants' cross-motion to dismiss.  (*Id.* at 3-7, 12-15.)

It is readily apparent that Hardie has failed to satisfy the Rule 11 requirements, as the request for sanctions was not filed separately from any other motion as required by Rule 11(c).  *See* Fed. R. Civ. P. 11(c)(2). Instead, Hardie moves the court for partial summary judgment in the same motion as his motion for sanctions.  (Dkt. No. 48 at 1, 9.)  Hardie's motion therefore must be denied.  *See Cole v. Stephen Einstein & Associates,*

*P.C.*, 365 F. Supp. 3d 319, 335 (W.D.N.Y. 2019) ("Any motion seeking Rule 11 sanctions that does not comply with [its] provisions must be denied." (quoting *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-CV-0642, 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014))). Even assuming that Hardie complied with the requirements of Rule 11, there is nothing to suggest that the Admissions Screening Sheet was falsified or contained forgery, or that sanctions are otherwise appropriate. For these reasons, Hardie's motion for sanctions is denied.[5]

## D. <u>Hardie's Motion for Partial Summary Judgment</u>

Hardie moves for partial summary judgment as to his claim of deliberate indifference to serious medical needs against officers Jourdin and Dixon in their individual capacities. (Dkt. No. 50 at 2, 14.) Hardie argues that summary judgment is warranted as to this claim because he was injured due to defendant police officers' use of excessive force on him, he was then deprived of medical care by officers Jourdin and Dixon, the emergency medical services agencies in Albany do not have a record of treating him or being dispatched for him on the night of his arrest, and

---

[5] To the extent Hardie filed this motion to contest the accuracy of the assertions made in the Admissions Screening Sheet, Hardie is free to challenge this document and all other evidence put forth by defendants at the appropriate time.

because the only evidence defendants have to counter these facts is falsified, and thus, inadmissible.  (*Id.* at 2-6, 9-12.)  In response, defendants argue that Hardie has no basis for suggesting that the documents attached as an exhibit to their cross-motion to dismiss were "falsified, altered, forged or changed in some manner."  (Dkt. No. 53 at 1.) Defendants annexed to their response an affidavit from Meaghan Hupe, who worked for the Albany Police Department as the booking clerk and who was responsible for preparing the contested documents.  (Dkt. No. 53, Attach. 2.)  Hupe testified that "all of the writing except for the supervisor's signature was completed by [her] and that the Admissions Screening Sheet introduced by defendants is "a true and accurate copy of the original."  (*Id.* at 6)  Previously, defendants argued that summary judgment "would be inappropriate on the basis that no discovery has been conducted."  (Dkt. No. 34, Attach. 2 at 2.)

To establish a claim for deliberate indifference to serious medical needs, a plaintiff must show that (1) he had a serious medical condition that was (2) met with deliberate indifference by the defendants.  *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  Thus, deliberate indifference has two necessary components, one objective and the other

subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Objectively, the alleged deprivation must be sufficiently serious, in the

sense that a condition of urgency, one that may produce death,

degeneration, or extreme pain exists.  Subjectively, the charged official

must act with a sufficiently culpable state of mind."  *Id.* (internal quotation

marks and citations omitted).

The motion for partial summary judgment fails on the merits.  As the

moving party, Hardie has the burden to demonstrate that no genuine issue

of material fact exists as to his claim of deliberate indifference to medical

care.  *See Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875

F.3d 107, 114 (2d Cir. 2017) ("[O]n a motion for summary judgment, the

burden is on the movant to show that it 'is entitled to judgment as a matter

of law.'" (quoting Fed. R. Civ. P. 56(a))); *Amore v. Novarro*, 624 F.3d 522,

529 (2d Cir. 2010) (explaining that in evaluating the material facts, the

court "construes all evidence in the light most favorable to the non-moving

party, drawing all inferences and resolving all ambiguities in [its] favor"

(citations omitted)).  Hardie has not met this burden.  On the one hand,

Hardie argues that he had a serious medical need, that defendants knew

about it, and that defendants were deliberately indifferent to providing

Hardie treatment for it.  (*See generally* Dkt. No. 50.)  In support of his assertion, he relies on, among other things, the absence of any treatment record.  (*Id.* at 4-7.)  On the other hand, defendants' rely on an affidavit and police reports, which demonstrate that the Albany Police Department offered Hardie medical care and he refused it.  (Dkt. No. 53 at 2; Attachs. 1, 2.)  At this early stage there is plainly an issue of fact sufficient to defeat summary judgment.

In any event, Hardie's motion for partial summary judgment—filed before discovery has commenced—is premature and is denied for that independent reason.  *See Assoc. of Car Wash Owners, Inc. v. City of New York*, 911 F.3d 74, 83 (2d Cir. 2018) ("Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000))); *Hellstrom*, 201 F.3d at 97 ("The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." (internal quotation marks and citations omitted)).

Additionally, Hardie fails to comply with Local Rule 7.1 by failing to

provide a separate statement of material facts and a memorandum of law.[6]

Instead, Hardie has combined argument and facts in his motion for partial

summary judgment. (Dkt. No. 50.) "[P]ro se status 'does not exempt a

party from compliance with relevant rules of procedural and substantive

law.'" *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355 (E.D.N.Y. 2004)

(quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Thus, Hardie's

motion must be denied for this reason as well.

Hardie's motion for partial summary judgment is denied without

prejudice to refile upon the completion of discovery.[7]

---

[6] Pursuant to the Local Rules of Practice, "all motions and opposition to motions require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a). "Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. . . . Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." N.D.N.Y. L.R. 7.1(a)(3).

[7] In Hardie's reply in support of his motion for partial summary judgment, (Dkt. No. 56), he makes additional requests in the event that the court declines to sanction defendants as requested in his motion for sanctions, (Dkt. No. 48). Specifically, Hardie requests a stay on his motion for sanctions and motion for partial summary judgment in order to (1) conduct discovery, (2) seek leave to amend his complaint again, and (3) add new defendants and claims to his second amended complaint. (Dkt. No. 56 at 9-10.) Hardie's request is procedurally improper. *See Ernst Haas Studio, Inc. v. Palm Press Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("[N]ew arguments may not be made in a reply brief." (citation omitted)). However, Hardie is free to file a motion for leave to amend his second amended complaint to add new defendants and claims, and Hardie will be free to conduct discovery once the discovery phase of the case begins. Hardie's request for a stay, (Dkt. No. 56), is denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Hardie's motion to strike (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that defendants' cross-motion to dismiss (Dkt. No. 34) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** to the extent that Hardie's Second Amended Complaint (Dkt. No. 17) seeks punitive damages against the City of Albany, which claim for relief is **DISMISSED**; and

> **GRANTED** to the extent that Hardie's Second Amended Complaint alleges claims against officers Jourdin, Dixon, and Buhner in their official capacities, which claims are **DISMISSED**; and

> **DENIED** in all other respects; and it is further

**ORDERED** that the following claim remains against the City of Albany: a *Monell* claim for failure to train or supervise its employees in relation to Hardie's arrest; and it is further

**ORDERED** that the following claim remains against officers Jourdin

and Dixon: a Fourteenth Amendment deliberate indifference claim in their individual capacities, and it is further

**ORDERED** that the following claim remains against officers Jourdin, Dixon, and Buhner: a Fourth Amendment excessive force claim in their individual capacities; and it is further

**ORDERED** that Hardie's motion for sanctions (Dkt. No. 48) is **DENIED**; and it is further

**ORDERED** that Hardie's motion for partial summary judgment (Dkt. No. 50) is **DENIED**; and it is further

**ORDERED** that Hardie's request for a stay (Dkt. No. 56) is **DENIED**; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Hummel to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 25, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge